MR. JUSTICE WEBER,
dissenting:
I respectfully dissent from the majority opinion. I agree with the standard of review stated in the majority opinion, that where the findings are based on conflicting evidence, our review is confined to determining whether there is substantial evidence to support the findings. I also agree with the majority’s statement that a review of the medical experts’ depositions reveals a sharp conflict in the medical evidence presented.
The majority then refers to various medical evidence which supports the claimant and concludes that there is no substantial evidence to support the finding that claimant failed to prove his disability resulted from the two injuries. I disagree with that conclusion as I do find substantial evidence to support the finding.
The majority relies on the testimony of Dr. Schimpff. I do not find an adequate basis for reliance on his testimony. It is true that Dr. Schimpff testified that he thought the electromyogram suggested partial denervation of muscles innervated by the L5 nerve root. That testimony did indicate the possibility of injury to the L5 nerve root. However, as Dr. Schimpff pointed out, that was not conclusive so he sent the claimant on for a CAT scan, which was completed in Spokane. It showed a central bulging disk at the L4-5 level, but was essentially negative. In other words, the CAT scan failed to show any reason for his condition.
Following the CAT scan, a myelogram was performed in the hospital at Kalispell. The examining doctor concluded that the myelogram study was essentially normal, that there was a slight change in the anterior margin at the L4-5 level but that this change was not proof of a bulging disk or abnormality. Dr. Schimpff agreed with the conclusion that the myelogram was essentially normal.
Following is the question asked by plaintiff’s counsel and Dr. SchimpiFs complete answer:
“Q. As a result of your examinations and treatment of Mr. Shup *193 ert, have you formed any opinion regarding the cause of his complaints of back pain and leg pain?
“A. I think the most consistent information is that he is suffering from an L5 radiculopathy. I presume that it’s related to his earlier injury in 1978 and have been unable to demonstrate a structural abnormality but have demonstrated a suttle [sic] electrical abnormality and physical examination has been consistent with that diagnosis although there have been other facets of his examination which have been confusing to myself and a variety of other physicians who have seen him in consultation.”
Note that his testimony does not show a direct connection to the 1978 injury. It is true that he concludes the most consistent approach is that he is suffering from an L5 radiculopathy, but he also points out that there are other facets of the examination which have been confusing to him and the variety of other physicians who have seen the claimant.
The foregoing testimony must be considered along with the following testimony by Dr. Schimpff on cross examination:
“A. ... So, I guess my best summary is that I personally was suspicious that there was an L5 nerve root injury and in looking for a possible remedial abnormality such as a herniated disc, a bone spur that would press on the nerve root or other abnormality, I was not able to find one.
“Subsequently Mr. Shupert’s examination changed somewhat. It changed when he was seen by Dr. Cooney and then it changed when I saw him in November of ‘82 and then in January of ‘83. Some of the earlier findings were no longer present. At that point however he was still having discomfort. The cause of his discomfort I thought was ambiguous and the cause of it was uncertain. Early on I thought it was an L5 nerve root compression or injury and I still feel that that is a possibility for his continued discomfort.” (Emphasis supplied.)
This summarizes Dr. SchimpiFs view that he was not able to find an abnormality which explained the condition. He points out that the cause of the discomfort was ambiguous and uncertain. Last, Dr. Schimpff in substance states there is a possibility of an L5 nerve root compression or injury. That does not in itself constitute a diagnosis of the claimant’s condition. This is consistent with Dr. SchimpiFs case notes of his examination of the claimant on January 10, 1983, where he stated:
*194 “IMPRESSION: Recurrence of lumbosacral back pain, etiology [cause] uncertain.”
As of January 10, 1983, Dr. Schimpff was uncertain as to the cause of claimant’s pain.
Reference has been made to Dr. Cooney’s report. With regard to his conclusions, Dr. Cooney stated the following with regard to the claimant:
“IMPRESSION: Low back pain and left lower extremity pain of uncertain etiology. The patient’s low back complaints appear to be aggravated by various types of activities which I feel he should avoid. To date, no definite diagnosis has been made to explain these symptoms. A significant root compression injury has been quite thoroughly excluded with myelography and lumbar CT scanning. He has not responded well to muscle relaxants and analgesics in the past.”
Dr. Cooney must be placed in the camp of those who have no opinion as to the cause of plaintiff’s condition.
With regard to the contention that there is a significant problem at the L4-5 level, following was Dr. Hilleboe’s testimony:
“Q. Doctor, I just have a couple questions after this cross examination. I will again ask you, in your opinion, did you find objective evidence of an L5 nerve root irritation or disc problem or soft tissue problem in Mr. Shupert?
“A. No.
“Q. Okay, but in essence then, you stick by your opinion that you could find no objective signs of the L5 nerve root irritation, disk problem or soft tissue injury.
“A. I could not find any. As far as his back was concerned. On one occasion he had a shoulder problem and a leg problem.
“Q. Let me rephrase that question and ask, in terms of you finding a permanent condition regarding an L5 nerve root or nerve root or soft tissue injury in the claimant.
“A. I didn’t find anything.”
In substance, Dr. Hilleboe found no basis for concluding there was damage or injury to the L5 nerve root. Dr. Schimpff does not actually disagree but merely states that is a “possibility.”
While it is true that there is conflicting evidence, it seems clear to me that the foregoing evidence constitutes substantial evidence supporting the findings of the Workers’ Compensation Court.
*195 I would affirm.